LUCIUS LYON *et al. vs.* THE AMERICAN SCREW COMPANY.

The by-laws of a corporation provided that the treasurer should keep full books of account of the business of the corporation, "which books shall at all times be open to the inspection of any of the stockholders."

*Held,* that the right of inspection thus given did not apply to the stock ledger.

On the application of the holders of four shares of the corporation in question, which was a large one, for a writ of *mandamus* to allow them to inspect the stock ledger:

*Held,* that the petitioners should show something more than their expectation of benefit from knowing the contents of the book; that they should show some controversy depending, or some question at issue, as to which the contents of the book are of consequence.

In the case at bar, there being no proof that reduction of dividends and depreciation in stock value resulted from corporate mismanagement, that the petitioners had been deprived of opportunity to confer with their fellow stockholders at annual or special meetings, or that there existed such dissatisfaction among the stockholders as to make conference desirable:

*Held,* that the petition for a writ of *mandamus* should be refused.

In a cause like that at bar, it is discretionary with the court to issue or to refuse the writ of *mandamus.*

PETITION for a writ of *mandamus.*

*February* 16, 1889.    STINESS, J.    The petitioners own two shares each of the stock of the American Screw Company, and pray for a writ of *mandamus* to compel the defendant to allow them, as such stockholders, to inspect the books of the company. It appears that an inspection of the books of account of the company was offered them, upon their demand, but the particular book which they desired to see was the stock ledger, or book containing a list of the stockholders, with their names and address, which was refused them by the officers of the company. An inspection of this book or list is the special prayer of the petition.

The relation of stockholders to a private corporation is somewhat complex. The corporation is a distinct being, but they are its members. It does acts to which they are not parties, but in the result they are personally interested. In reality they are the corporation and its property their property, yet it must act independently by its agents, and arrange and control its property by them. From such a relation it is evident that stockholders are entitled to full knowledge of its affairs; that even owners of small interests should not be deprived of the substantial benefit arising from such knowledge, nor of a voice in the management; while, at the same time, the corporation should be as free as possible to

transact its business.   Since it is not a partnership, every member cannot have the same privileges as a partner would have, and consequently the rights of a stockholder must be subject to some limitation.   One of the privileges incident to ownership of stock in a corporation is that of an inspection of the books and condition of the company.   This privilege, in general, becomes a right when the inspection is sought at proper times and for proper purposes; and, in particular, when it is specially given either by the law of the state or by the charter or by-laws of the company.   Cases of the latter class are illustrated by two in New York reports.   A statute provided that the book containing the names of the stockholders should be open to the examination of every stockholder for thirty days previous to any election of directors.   In *Cotheal* v. *Brouwer*, 5 N. Y. 562, this right given by the statute, together with the right to take a copy or memorandum, was recognized, and a statutory penalty imposed for a refusal of it.   In *People* v. *Pacific Mail Steamship Co.* 50 Barb. S. C. 280, the right to inspect the list of stockholders was given in the charter; and the right so given was enforced by *mandamus*.   But the writ of *mandamus* issues, as of course, only when a specific legal right, clearly established, is to be enforced.   High on Extraordinary Remedies, §§ 9, 277.   In cases like those cited above, the legislature by statute or charter, or the company by by-laws, have assured to the stockholder a right to examine the books of the company, irrespective of his purpose in so doing, and the right thus given cannot be denied him; for it is not within the province of the company or the court to inquire into the reasonableness of the request.   The by-laws of the defendant company provide that the treasurer shall "keep or cause to be kept a full and accurate account of all the business of the company, in suitable books, which books shall at all times be open to the inspection of any of the stockholders. The right guarantied to the stockholders in this provision is the right to inspect the books of account of the business of the company.   The petitioners' right, to this extent, is not denied by the defendant.

But the petitioners argue that the transfer of stock is a part of the business of the company, and that, consequently, the stock ledger is included within the operation of the by-law.   We do not

so understand it.   An "account of all the business of the company" has reference to its manufacturing and commercial transactions.   A list of stockholders would neither naturally nor properly be included in an account of the business.   Hence a book containing the names of the stockholders is not, in our opinion, within the provision of the by-law.   There is nothing in the charter nor in the statutes relating to this matter.   If, then, the petitioners have not an express and absolute right to examine this book, but only what may be termed a privilege so to do, incident to ownership of stock, the question comes, under what circumstances may this privilege be enforced as a right.   The answer has already been given, at proper times and for proper purposes.   One reason for this limitation is, that a stockholder should not be entitled to call upon the court to enforce that which is not given him by law or the rule of the company, unless the circumstances show that he needs such aid for some reasonable and proper purpose. While all the privileges of a stockholder should be fully accorded to him when occasion requires, the affairs of the company should not be interfered with without such requisite occasion.   The rule to be observed is well stated in *People ex rel. Hatch* v. *L. S. & M. S. R. R. Co.* 11 Hun, 1, affirmed in *Matter of Sage et al.* 70 N. Y. 220, as follows : " To hold that every person, who shows himself to be a holder of stock, is at liberty to demand an examination of the transfer books when and as often as he pleases, and, if refused, to apply for a writ of *mandamus* to enforce an absolute right, would be to establish a rule highly prejudicial to the interests of all corporations and their stockholders.   A few inimical holders of stock could thereby produce great embarrassment and injury, and substantially prevent any large dealings in the stock by others.   The power of the court should be exercised in such cases with great discrimination and care ; and while stockholders should be carefully protected from any abuse on the part of the corporation of its powers, or unjust denial of their rights, so, on the other hand, courts should guard against all attempts, by combinations hostile to the corporation or its existing officers, to use its writ of *mandamus* to accomplish their personal or speculative ends."

In *Commonwealth* v. *Phœnix Iron Co.* 105 Pa. St. 111, the court

says: " Were it established that every stockholder may have a *mandamus* to enforce his right of inspection, for the mere purpose of enabling him to vote understandingly, where the stockholders are numerous there would result great inconvenience and hindrance in the conduct of the business of the corporation. The interests of all the corporators require that the writ shall not go at the caprice of the curious or suspicious. It would seem from the weight of authority, and in reason, that a shareholder is entitled to *mandamus* to compel the *custos* of corporate documents to allow him an inspection and copies of them at reasonable times, for a specific and proper purpose, upon showing a refusal on the part of the *custos* to allow it; and not otherwise." In this case the writ was granted upon the ground that the petitioner was seeking facts to be used in a bill in equity which he proposed to file against the corporation and its officers. We think it is well settled that, in cases like the one before us, it is discretionary with the court whether to issue a writ of *mandamus* or not; and that this discretion depends upon the necessity or propriety of granting it under the circumstances shown. In the following cases it was denied, because the facts did not show that it was necessary for the particular occasion : *The King* v. *Merchant Tailors' Co.* 2 B. & Ad. 115 ; *Regina* v. *Marquita Mining Co.* 1 El. & E. 289 ; *People ex rel. Field* v. *Northern Pacific R. R.* 50 N. Y. Superior Ct. 456 ; *Rosenfield* v. *Einstein*, 46 N. J. Law, 479 ; *People ex rel. Hatch* v. *L. S. & M. S. R. R. Co. supra ; Hatch* v. *City Bank of New Orleans*, 1 Robinson, La. 470. In the following cases it was granted expressly upon the showing of a proper cause, or of a right given: *In re Burton and the Sadlers' Co.* 31 Law Journal, Rep. C. Law, 62 ; *People* v. *Pacific Mail Steamship Co.* 50 Barb. S. C. 280 ; *Cockburn* v. *Union Bank*, 13 La. An. 289. In the latter case the mere benefit of knowledge to be derived from the books as to the proper conduct of the business seems to have been deemed a sufficient cause, but in the other cases it is held that something more must be shown ; as that a controversy is depending, or that some question or interest is involved, with reference to which the contents of the books may be applicable.

We think the rule thus recognized sufficiently protects the stock-holder in all his substantial rights, and at the same time prevents

an undue interference with the company in the conduct of its affairs. If a stockholder shows no good cause for a writ of *mandamus*, he is not injured by its refusal, and a company should not be hampered by frivolous and vexatious demands by one who may have secured stock in hostility to its interests. We have, therefore, to consider whether the case now made is such as to call for the issuing of the writ. The petition is urged upon the ground that the stock has of late paid little or no dividends, and has depreciated very much in market value. But it is not alleged that this is due to any mismanagement of the company; or that it has been able to pay dividends; or that the books would disclose a value in the stock above its market value, if this would be material. For all that appears, the lack of dividends and the decline of the stock may be due simply to the ordinary competition and vicissitudes of business. In any event, no question is made of the right of the petitioners to fully inform themselves from the books of the company as to its financial condition. Also, that the officers of the company do not print and distribute among its stockholders any reports as to its business or condition, and they desire to inform themselves upon these matters. Excepting printing, this allegation is not supported by the testimony; on the contrary, it appears that copies of the treasurer's report to the annual meetings have always been furnished to any stockholder asking for them. Also, that they desire to confer with their fellow stockholders, and for this purpose to inspect the list. The by-laws provide both for annual and special meetings, which were doubtless deemed to afford ample opportunity for conference about the affairs of the company, as well as the fit occasion for it. It does not appear that the petitioners have been deprived of such conference at any annual meeting, or that they have tried to call a special meeting. Certainly, outside talk among stockholders could amount to nothing unless it were to be followed by action at a corporate meeting. Neither do they allege that there is any considerable dissatisfaction among the stockholders such as to render such a conference advisable or important. Indeed, the fact that one of the petitioners has advertised from time to time, for nearly a year, for stockholders to send him their names and address for this purpose, without success, tends to show that there is no such dissatisfaction, and that the

desire for a conference is not reciprocal. We fail to see, therefore, how the petitioners would be benefited by a writ of *mandamus*, or injured by its refusal. We are not pointed to any reasonably good result to be accomplished which cannot be reached by them at any annual meeting, or, in case of emergency, at a special meeting. If there are not ten stockholders in so large a company, owning twenty five hundred shares out of thirteen thousand, who want a special meeting, it is fair to presume, especially when nothing to the contrary is alleged, that there is no such emergency as to call for the aid of the court to gratify a personal desire, or to enable one to stir up a controversy. Every stockholder, when dividends are not made and stock is low, could urge all that is urged here. To grant the writ, therefore, would be to say that in all such cases the privileges of inspection must be enforced as an absolute right, whether any reasonable purpose is to be subserved or not. We think this would be going too far.

While two petitioners are nominally before us, there is in reality but one ; for Mr. Dennis, an attorney for Mrs. Lyon, holds the two shares conveyed to him simply as security for services to his client. The wife of Mr. Lyon, alleged to be a large stockholder, does not join in the petition, nor does he appeal to the court in her behalf. With an anxious desire to see that no substantial right of a stockholder shall be jeopardized by the oppressive management of a corporation, we do not think the petitioner makes a case for a writ of *mandamus*, and the petition must therefore be dismissed.                    *Petition dismissed.*

*Benjamin N. Lapham,* for petitioner.
*James Tillinghast,* for respondent.

