## KIMBALL v. DERN, et al.

No. 2059. Decided May 6, 1911 (116 Pac. 28).

1. CORPORATIONS—STOCKHOLDERS—RIGHT TO INSPECT BOOKS. At common law a stockholder is entitled to inspect the corporate books and records at all seasonable times and for proper purposes, but not for a purpose injurious to the corporation. (Page 184.)

2. MANDAMUS—SUBJECTS OF RELIEF—CORPORATE RELATIONS. Mandamus lies to enforce a stockholder's right to inspect corporate books and records. (Page 184.)

3. CORPORATIONS—STOCKHOLDERS—RIGHT TO INSPECT BOOKS. The right of a *bona fide* stockholder under Comp. Laws 1907, section 329, and under section 4415 to inspect corporate books, etc., exists regardless of his purpose in inspecting.[1] (Page 185.)

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by George S. Kimball against John Dern and others.

---

[1] Citing Harkness v. Guthrie, 27 Utah, 248, 75 Pac. 624, 107 Am. St. Rep. 664; Clawson v. Clayton, 33 Utah, 266, 93 Pac. 729; State v. Silver King Con. M. Co., 37 Utah, 62, 106 Pac. 520.

Judgment for plaintiff.   Defendants appeal.

AFFIRMED.

*H. C. Edwards* for appellants.

*J. D. Skeen* for respondent.

McCARTY, J.

Plaintiff, George S. Kimball, applied to and obtained from the District Court of Salt Lake County a writ of mandate requiring the defendants to permit him, as a stockholder of the Continental Life Insurance Company, a corporation organized and existing and doing business under the laws of the state of Utah, to examine the books, records, and papers of the corporation.   Plaintiff, after setting forth in his affidavit the corporate existence of the company, alleges that he is "an actual and *bona fide* stockholder in said corporation;" that each of the defendants is a director, and that defendant W. V. Rice is secretary and W. H. Cunningham general manager of the corporation: "that the said defendants have in their possession and under their control in Salt Lake County, State of Utah, all of the books, records, contracts, notes, and documents pertaining to and showing the financial condition of said corporation and the general methods of conducting its business, . . . that defendants refused and still refuse to permit affiant to make such examination and inspection."   The defendants in their answer admit the corporate existence of the company; that they are directors of the company; that W. V. Rice is secretary; and that W. H. Cunningham is assistant secretary and general manager of the corporation.   Defendants also admit that plaintiff "is an actual and *bona fide* stockholder of record of said corporation;" and that "plaintiff made demand upon each of said defendants that he be permited to examine and inspect all the books, records, files, contracts, notes, stocks, bonds, mortgages, and securities held and owned by said corporation which were in the possession of defendants or either of them and in such manner as not to interfere with

the conducting of the business of said corporation, and admit that all of said defendants (except H. C. Edwards who was not in a position to either grant or refuse plaintiff's request) stated to said plaintiff that he would not be permitted to make such examination and inspection." They admit that defendant W. H. Cunningham, assistant secretary and general manager of the corporation, has charge of all the books, records, files, contracts, etc., called for by plaintiff. As an affirmative defense defendants allege that plaintiff has been involved in litigation with the corporation "for many months last past, which said litigation is still pending and undisposed of, and the said plaintiff bears a great deal of malice and ill will towards . . . said company and its various officers and directors, including these defendants . . . ; that plaintiff intends to bring (other) suits and legal proceedings against said . . . company and its officers and directors, and in other ways endeavor to give the business affairs and character of said company adverse notoriety from malicious and improper motives." It is also alleged that plaintiff is a stockholder and officer in the West Coast Life Insurance Company which is engaged in "writing life insurance policies and contracts of the same nature and character as those written by the Continental Life Insurance & Investment Company in the same states where said latter company is doing business," and that it is to the interest of plaintiff "to cause as many policies issued by said Continental Life Insurance Company to lapse as possible to the end in view that he may write life insurance policies for such parties in said West Coast Life Insurance Company." Defendants further allege that W. H. Cunningham, assistant secretary and manager of the corporation, furnished to plaintiff for his inspection "all books, instruments, records, files, and papers of every nature and description," belonging to the corporation called for by plaintiff except such books and records as disclose the names and addresses of the policy holders of the company. Defendants further allege, on information and belief, that plaintiff's "sole and only purpose in probing further into the books and records

of the corporation is to further his purpose and intention of instituting and prosecuting legal proceedings independent of the merit with the said end in view of injuring said corporation by giving it adverse notoriety."

On motion of plaintiff the court rendered judgment in his favor upon the pleadings. The judgment, so far as material here, recites that "defendants and each of them be and they are hereby required to permit plaintiff, his attorney and stenographer, to make an examination and inspection of all the books, records, contracts, notes, and documents pertaining to the business of said Continental Life Insurance & Investment Company, a corporation; . . . that such examination be permitted between the hours of nine a. m. and six p. m. of each and every day, excepting only Sundays and holidays; . . . and they are hereby required to permit plaintiff, his attorney and stenographer to make notes and take copies of all said books, records, contracts, notes and documents." The defendants, except H. C. Edwards, appeal.

Under the common law a stockholder has the right to inspect the books and records of the corporation at all seasonable times and for a proper purpose, and ordinarily mandamus will lie to enforce the right whenever an inspection by the stockholder is necessary to protect the interests of the corporation or his own interests. But this common-law rule is not so absolute that the writ will issue without regard to the facts and circumstances. Under such rule the motives of the stockholder in seeking an inspection may be made a matter of judicial inquiry, and the great weight of authority seems to be that if they are found to be "improper," and that he, the petitioner, desires to injure the corporation, the right will be denied him. Under this rule the parties in control of the corporation have the power to so harass and delay a minority stockholder to such extent as to practically deprive him of the right; and that, too, regardless of his motive and purpose in seeking an inspection. This phase of the question we shall again refer to further along in the opinion. The restricted right of inspection under the common law has been modified

in England and in many of the states of the Union by statute. Decisions from nearly all of the states and the leading English cases are collected and reviewed in an instructive note on the questions here involved found in 45 L. R. A. 449. We also invite attention to an extensive note in 10 Am. and Eng. Ann. Cas. 990. In this state the right of a *bona fide* stockholder of record to inspect the books and records of a corporation is fixed and regulated by statute.

The decisive question presented by this appeal is, Has a party who is a *bona fide* stockholder of record of a corporation the right under our statute to inspect the books of such corporation regardless of his motive or purpose in making the inspection? Questions involving the stockholders' right of inspection have been presented to and determined by this court in practically all phases except the one here presented. (*Harkness v. Guthrie*, 27 Utah 248, 75 Pac. 624, 107 Am. St. Rep. 664; *Clawson v. Clayton*, 33 Utah 266, 93 Pac. 729; *State v. Silver King Con. M. Co.*, 37 Utah 62, 106 Pac. 520.) While the precise question here involved was not directly passed upon in either of the cases mentioned, yet we think the construction given the statute under consideration in those cases is in effect a recognition of the doctrine contended for by respondent, namely, that an actual, *bona fide*, stockholder of record has the right at all seasonable hours to inspect the books of the corporation regardless of his motive in so doing. The provisions of our statute (Comp. Laws 1907) relating to private corporations, so far as material to the determination of the question here involved are as follows:

"Sec. 328. It shall be the duty of the corporation to keep true and correct books of its proceedings and business.

"Sec. 329. The books of every corporation organized under the laws of this state must be so kept as to show the original stock holders, their interests, the amount paid on their shares, and all transfers thereof; *all books of any corporation shall, at all reasonable hours, be subject to the inspection of any bona fide stockholder of record.*"

Section 4415 of the Penal Code (Comp. Laws 1907) provides:

"Every officer or agent of any corporation, having or keeping an office within this state, who has in his custody or control any book, paper, or document of such corporation, and who refuses to give a stockholder or member of such corporation, *lawfully demanding*, during office hours, to inspect or take a copy of the same, or any part thereof, a reasonable opportunity to do so, is guilty of a misdemeanor." (Italics ours.)

We think the right thus given to the stockholder of a corporation to inspect the corporate books is an absolute and not merely a qualified or conditional right. The purpose of the statute, no doubt, is to give the stockholder who may own but a few shares of stock the same right of access to the books of the corporation as is given to the large investor who controls the majority of the stock, and is thereby enabled to appoint officers and agents of his own selection to keep the books and manage the business affairs of the company. In other words, we think the purpose of the statute relating to the inspection of the books of a corporation is to put all of the *bona fide* stockholders of record upon an equal footing with each other. The minority stockholders are thus afforded the same means of keeping themselves informed of the condition of the corporation, its methods of doing business, and the fidelity with which the business affairs of the concern are being conducted by the officers and agents in charge as are given the stockholders controlling a majority of the stock. Furthermore, this right of inspection places it beyond the power of one or more of the stockholders who own a majority of the stock to keep the small stockholders in ignorance of the true financial condition of the corporation, and thereby enable them to manipulate the affairs of the company for their own interests, to the exclusion, if not sacrifice, of the interests of the minority stockholders. Not only does the absolute right of inspection under the statute tend to protect the interests of the small stockholders, but it also tends to safeguard the interests of all parties and the public in general who either voluntarily or because of the force of

circumstances are compelled to do business with the corporation. Naturally parties in control of corporations, knowing that some stockholder who may be dissatisfied with the manner in which the business of the company is being conducted may at any time probe into its affairs by exercising his right of inspection, are less likely to combine their interests for the purpose of "freezing out" the small stockholders, or of forming combinations with other corporations inimical to the public welfare, than they would be if this absolute right of inspection were denied the stockholder. As Justice Gaynor aptly observed in the case of *In re Reiss,* 30 Misc. Rep. 234, 62 N. Y. Supp. 145: "Placing the acts of directors open to such scrutiny would prevent ninety-nine one-hundredths of the wrongs they do the stockholders."

The restricted rule of inspection contended for by appellants, if followed, would practically deprive the stockholder of the benefits which we think the statute is intended to confer, because in every case where a small stockholder would demand permission to inspect the books of the corporation the officers in charge could arbitrarily refuse to permit him to do so. And it matters not how laudable his motive or purpose might be in seeking to make the inspection, nor how vitally important the information sought might be to his interests, he would be forced to resort to the slow process of the law to enforce his right; and when he applied to the court for relief he would be met, as the respondent in this case was met, with an answer containing allegations "on information and belief" that his motive for seeking an inspection of the corporate books is improper, and that he intends to use the information obtained thereby to the detriment of the corporation and to the injury of the other stockholders. Should the trial court decide the issues in favor of the corporation, the petitioner would then have to either forfeit his right to inspect or incur the expense of an appeal. If, on the other hand, the judgment of the trial court should be in his favor, the corporation could further delay the inspection by appealing to the Supreme Court. Should the petitioner finally prevail after months, and possibly years, of

expensive and vexatious litigation, the information sought to be obtained from the books would, in all probability, be utterly worthless to him because of the delay. The penal statute making it a misdemeanor for any officer or agent of a corporation having "in his custody or control any book, paper, or document of such corporation" to refuse a stockholder the right, upon lawful demand, "to inspect or take a copy of the same or any part thereof," was evidently intended to deter such officers and agents from resorting to the dilatory tactics mentioned, and to insure prompt compliance on their part when lawful demand is made on them by a stockholder for permission to exercise the right of inspection.

The conclusions here reached are supported by abundant authority. *Mutter v. Eastern & Midland Ry. Co.*, 38 Ch. D. 92, is a case in which a stockholder of record was permitted to inspect the stock register of the corporation, but was denied the right to take copies. The claim by the company was that Mutter was not a *bona fide* stockholder, but that he was "merely a nominee of a rival company" and acting in the interest of such company. The denial was based on the further ground that while the statute gave him the right to inspect the stock register it did not authorize him to take copies. The act of Parliament under which Mutter claimed the right to take copies, so far as material here, provides:

"The register shall be accessible for inspection and perusal at all reasonable times to every mortgagee, bondholder, debenture stockholder, shareholder and stockholder of the company, without the payment of any fee or charge."

Chitty, J., before whom the cause was tried, said:

"In this case I have no hesitation in saying that the plaintiff took his stock of both classes (ordinary and debenture) at the suggestion and in the interest of the Great Eastern Railway Company (the rival company) or Mr. Parks, the chairman, a large holder of stock in that company. I think he is acting to a large extent in the interests of the Great Eastern Railway Company, but it appears to

me on the authorities that I am not justified in going behind the register. Even if I came to the conclusion that I did not like the position of the plaintiff in this particular matter, I should have no right to refuse to do him justice or accord him the rights which the legislature has given him." And again he says: "Unquestionably, as a matter of fact, directors of a company are not disposed to allow stockholders too much inspection, when there is a question about to be decided at a general meeting; while the directors have the advantage of being able themselves or by their officers, to refer to the register and send out circulars and canvass all the stockholders. These sections (referring to the statute), I think, were intended to put the stockholders in a similar position." And in conclusion he said: "I think that, when a man is inspecting, he may make *bona fide* use of his inspection, and it follows from his right to inspect that he can make copies."

The company appealed from the decision and the Court of Appeals, in the course of a well-considered opinion affirming the judgment, said:

"Now the fact that he (plaintiff) has taken both the shares and the debenture stock at the instance of the Great Eastern Railway Company is made out by the cross-examination, but at the same time he is unquestionably in point of law both a shareholder and a debenture stockholder; he therefore has the rights, whatever they may be, of a shareholder and a debenture stockholder, and whether he is trustee for other people we cannot inquire. . . . When the right to inspect and take a copy is expressly conferred by statute, the limit of the right depends upon the true construction of the statute. When the right to inspect and take a copy is not expressly conferred, the extent of such right depends upon the interest which the applicant has in what he wants to copy, and on what is reasonably necessary for the protection of his interests. . . . Bearing in mind these principles it is necessary to turn to the statute on which the plaintiff relies and to see what right it confers upon him. The section which gives him the right to inspect is silent on the subject of taking copies."

After referring to other sections of the statute bearing on the question, the court says:

"Parliament having conferred the right to inspect, the court ought not to so construe the statute as to render the right conferred illusory, and if the court were to hold that in such case as the present the right to inspect existed, but the right to take copies did not, the court would in effect be rendering the statute of no avail."

We have copied somewhat copiously from the foregoing opinion because the questions involved in that case were somewhat similar to the questions presented in this case. In 4 Thomp. Corp., section 4407, the author says:

"In corporate management, or mismanagement, no more frequent or more aggravated species of outrage exists than the refusal of those in possession of the corporate books to disclose to the stockholders the written evidence of their stewardship; and in many cases nothing short of severe pecuniary forfeitures, followed by imprisonment as for crimes, will afford an adequate protection to minority stockholders."

Both the Constitution and the statute of California contain a provision practically the same as section 329 of our Code, and the Supreme Court of that state, in passing upon the question of the extent of the right of a stockholder, under the Constitution and the statute, to examine the books of a corporation, in the course of a well-considered opinion, said:

"Where the right is statutory, it is not necessary for the petition to aver or show the purpose or object of the inspection. Neither is it any defense to allege that the objects and purposes are improper, and that the petitioner desires to injure the business of the corporation. The clear legal right given by the Constitution and the statute cannot be defeated by stopping to inquire into motives. . . . The statute is founded upon the principle that the shareholders have a right to be fully informed as to the conditions of the corporation, the manner in which its affairs are conducted, and how the capital to which they have contributed is employed and managed. The shareholder is not required to show any reason or occasion for making the examination. Nor can he be met with the defense that his motives are improper." (*Johnson v. Langdon*, 135 Cal. 624, 67 Pac. 1050, 87 Am. St. Rep. 156.)

In the case of *State ex rel. v. St. L. & S. F. Ry. Co.*, 29 Mo. App. 301, the court said:

"The statute (Rev. Stat., section 720) gave the relator a right to the inspection claimed; and where a party has a legal right to a thing, the motive which may prompt him in demanding his right is not the proper subject of a judicial investigation."

In the case of *Weihenmayer v. Bitner,* 88. Md. 325, 42 Atl. 245, 45 L. R. A. 446, it is said:

"The right thus given (referring to the Maryland statute) to the stockholder is unconditional and unqualified. The stockholder has a right to the information contained in the accounts of the transactions of the corporation. . . . It is stated in the answer to the petition that Weihenmayer (plaintiff) is engaged in the manu-' facture and sale of hosiery and knit goods, and is a rival and competitor of the Windsor Knitting Mills (of the directors of which company Bitner was secretary) in business; and that he desires an examination of the books, documents and records of the corporation for the purpose of obtaining information to be used by him in the conduct of his own business to the injury and loss of said corporation. . . . But the petitioner's right would not be forfeited by any such cause. The right is given to him as a stockholder by statute, and is absolute and not made to depend upon any circumstances but the ownership of the stock."

In *State ex rel. Bourdette v. Gaslight Co.,* 49 La. Ann. 1556, 22 South. 815, it is said:

"No better way of safeguarding the interests of the public can perhaps be devised, or one that may be so easily and readily applied, as the right to the frequent, sudden, and speedy examination of the books of corporations in the stock or shares of which investors and speculators are invited to trade. The recognition of this fact attests alike the wisdom and purpose of the framers of the Constitution. The question here presented was virtually passed upon in *Legendre v. Brewing Ass'n,* 45 La. Ann. 669, 12 South. 837, 40 Am. St. Rep. 243, and adversely to the pretensions of the defendant corporation herein. See, also, *State ex rel. Martin v. Bienville Oil Works,* 28 La. Ann. 204; *Cockburn v. Union Bank,* 13 La. Ann. 289. In the United States the prevailing doctrine appears to be that the individual shareholders in a corporation have the same right as the members of an ordinary partnership to examine their company's books, although they have no power to interfere with the management. Morawetz, Corp., par. 473. This doctrine obtains with all the more force in this state by reason of its recognition in the Constitution itself."

In the case of *Clawson v. Clayton, supra,* this court, speaking through the present Chief Justice, said:

"As we view the matter, the right to make an inspection and examination of corporate books, at reasonable times, by a stockholder, is an absolute and not a qualified right. The right is given

by statute without a qualification, except that it be made at reasonable hours. The fact that the right is sought to be strictly enforced by a penal statute emphasizes the existence of the right, rather than qualifies it."

The case of *Harkness v. Guthrie, supra,* was appealed to the Supreme Court of the United States and the judgment of this court was affirmed. Mr. Justice Day, in the course of a carefully prepared opinion, which was concurred in by the other justices, says:

"It is suggested in argument that if the shareholder has this right it may be abused, in that he may make an improper use of the knowledge thus gained. There is nothing in this record, however, to suggest, by way of argument or testimony, that the shareholder desired the information which the books would give for other than a lawful purpose. . . . Many legal rights may be the subjects of abuse, but cannot be denied for that reason. A director who has the right to an examination of the books may abuse the confidence reposed in him. Certainly this possibility will not be held to justify a denial of legal right, if such right exists in the shareholder. The possibility of the abuse of a legal right affords no ground for its denial." (*Guthrie v. Harkness,* 199 U. S. 148, 26 Sup. Ct. 4, 50 L. Ed. 130.)

*Lewis v. Brainerd,* 53 Vt. 519-522, was an action to recover a penalty fixed by statute for refusing a stockholder permission to examine the corporate books, and the court, in the course of an opinion, said:

"The shareholders in a corporation hold the franchise, and are the owners of the corporate property; and as such owners they have the right, at common law, to examine and inspect all the books and records of the corporation at all seasonable times; and to be thereby informed of the condition of the corporation and its property. Our statute provides the method of securing and enforcing such rights. The statute is remedial; it was enacted to secure rights and suppress fraud and wrong; and should be so construed and enforced as effectually to carry out the purpose of the Legislature, and remedy the evil sought to be prevented."

Ohio has a statute (section 3254 [Rev. St.]) similar to the one here under consideration and in the case of *Cin-*

*cinnati Volks-Blatt Company v. Hoffmeister,* 62 Ohio St. 189, 56 N. E. 1033, 48 L. R. A. 732, 78 Am. St. Rep. 707, the Supreme Court of that state, in construing the statute, said:

"But it is insisted that this provision is not intended to enlarge the right, but is a mere affirmation of the common-law rule. . . . Is it not reasonable to conclude that the object was to get rid of all uncertainty and of various conditions, whatever they were, and establish the right by a rule, clear, direct, simple, and practically without qualification? The language is plain. The right given is clear. One condition and one only, is attached, viz., that the right can be exercised only at reasonable times. Ordinarily the motive, or purpose, of the party who is in the exercise of, or is about to exercise, a clear legal right, is unimportant. . . . We are of the opinion that where a suitor demands the enforcement of a clear right given him by law, whether the remedy be legal or equitable, his motive for such action is not a proper subject for judicial investigation." And further along in the same opinion the court says: "Nor is the right limited to one inspection. It is an incident to ownership of stock, and may be exercised at any reasonable time so long as the relation of stockholder subsists. . . . The property of a corporation, although subject under some conditions to the rights of creditors, is, in the last analysis, that of the stockholders, and that when one seeks an inspection of its books, records, or property, he is in reality but seeking an inspection of his own, and when such inspection will not unreasonably inconvenience others who have like interest in and rights to the property, and that the attempt to unreasonably hamper such inspection by officers, managers, or others, is an unjust exercise of power, and one which courts should not sanction."

The New York courts hold that where the right is given by statute the motives of the stockholder in seeking to exercise his statutory right are immaterial and cannot be inquired into. It seems that the statute of that state gives the stockholder the right to inspect the *stock book* only of a corporation. The statute, so far as material here, is as follows:

"The *stock book* of every corporation shall be open daily, during at least three business hours, for the inspection of its stockholders and judgment creditors, who may make extracts therefrom." (Laws N. Y. 1900, c. 128.)

39 Utah—13

In the case of *People v. Keeseville, etc.,* 106 App. Div. 349, 94 N. Y. Supp. 555, the Supreme Court of that state says:

"The relator did what he could by way of demanding inspection of the stock book. . . . We think his demand was sufficient, and that he had an absolute right of inspection, and that the peremptory writ of mandamus should have been granted. . . . With respect to the *general business books* of a corporation, the court will not order an inspection by the stockholder unless he seeks to learn something which he has the right to know for his own protection; and his application must be in good faith, and not for the purpose of injuring or annoying the corporation. (Citing cases.) The right of inspection of *books of this character* by a stockholder is a *common-law right,* and the granting or withholding of it, or refusal by the corporation, rests in the sound discretion of the court. But the inspection of the *stock book* is on a different footing, and is a right given absolutely to the stockholder by the statute, in addition to his common-law rights. . . . The motives of a stockholder in inspecting the *stock book* alone are immaterial. . . . It was a privilege accorded him by statute, and he should have been granted inspection." (Italics ours.)

So in the case of *People ex rel. Harriman v. Paton,* 20 Abb. N. C. (N. Y.) 195, the court said:

"This proceeding is brought under that act, and as the duty is absolute, I do not think that the transfer agent has the right to inquire into the motives and purposes of the stockholder." And again, in the same opinion, on page 199, it is said: "It being established that the duty of the transfer agents under the act of 1842 is absolute; that the relators are owners of the certificates in question; and that the motive of a stockholder, who has an absolute right to inspect the books of a corporation, cannot be inquired into —why are not the relators entitled to the relief which they seek?" The writ was issued as prayed for.

In *People ex rel. McDonald v. U. S. Mercantile Rep. Co.,* 20 Abb. N. C. (N. Y.) 192, the court said:

"This application, however, is made to enforce a right to inspect the stock book, which is expressly given by section 25 of chapter 40 of the Laws of 1848; and the cases above mentioned do not apply. Under that section, stockholders, creditors, and their personal representatives have an absolute right during the usual business hours on every day except Sunday and the 4th day of July, to inspect the stock book."

The same question was involved in the case of *Cotheal v. Brouwer,* 5 N. Y. 562, and the court said: "The officer having the custody of the book is not constituted by the act a judge of the motives of the stockholder in making his inspection, or of the precise manner in which it shall be conducted; nor of the purpose which the information obtained shall be made to subserve." And this doctrine is recognized and adhered to in the case of *Re Steinway,* 159 N. Y. 250, 53 N. E. 1103, 45 L. R. A. 461. Mr. Justice Vann, speaking for the court, says, in the course of a well-considered opinion: "To the extent, however, that an absolute right is conferred by statute, nothing is left to the discretion of the court; but the writ should issue as a matter of course although even then, doubtless, due precautions may be taken as to time and place, so as to prevent interruption of business or other serious inconvenience." (*In re Reiss,* 30 Misc. Rep. 234, 62 N. Y. Supp. 145; *People ex rel. Clason v. Nassau Ferry Co.,* 86 Hun, 128, 33 N. Y. Supp. 244; *Kennedy v. Chicago, etc., Co.,* 14 Abb. N. C. (N. Y.) 326; *People v. Goldstein,* 37 App. Div. 550, 56 N. Y. Supp. 306.)

Even if we had no statute in this state on the subject the plea of the defendants that plaintiff's purpose in making an inspection of the corporate books is to collect data and facts to be used against the corporation in certain litigation now pending between himself and the corporation and in other suits which he is intending to bring against it, would be unavailing as a defense. This question was directly involved in the case of *Varney v. Baker,* 194 Mass. 239, 80 N. E. 524, 10 Ann. Cas. 989. The petitioner in that case desired "to examine the books and records of the company for the purpose of ascertaining its condition . . . and whether there had been mismanagement of the corporation, if so, what effect it has upon the assets and business of the corporation, in order that he may be enabled to bring a bill in equity for the appointment of a receiver." The court held that he was entitled to examine the books "in accordance with his request."

It was formerly held in England under the common law that the right of inspection could be exercised as a matter of course only when there was some dispute about matters pertaining to the corporation between the stockholder and officers of the company or the other stockholders. (*Rex v. Merchant Tailors Company,* 2 B. & A. 115; *In re Burton and Saddlers Company,* 31 Law Jour. R. 62.) And it seems that some of the courts of last resort in this country have announced the same rule. (*Com. v. Phoenix Iron Co.,* 105 Pa. 111, 51 Am. Rep. 184; *Lyon v. American Screw Co.,* 16 R. I. 472, 17 Atl. 61.) While we find that the right of a stockholder as it existed at common law to inspect the books of a corporation has been enlarged and extended by statute both in England and in many of the states, still we have found no case in which it is held that any such rights under the common law have in any particular been restricted or abridged by statute. (*Matter of Sage et al.,* 70 N. Y. 220; *Matter of Steinway,* 159 N. Y. 264, 53 N. E. 1103, 45 L. R. A. 461; *State ex rel. Doyle v. Laughlin,* 53 Mo. App. 542; *People v. Eadie,* 63 Hun, 320, 18 N. Y. Supp. 53.)

The disastrous effect which it is claimed the rule giving the stockholder the absolute right to examine the corporate books will have on the business interests of the corporation where a stockholder who is hostile to the corporation and to the officers and agents in charge of its affairs exercises his right of inspection for the purpose of making known to competitive and rival concerns the business transactions of such corporation, is, we think, more fanciful than real. Where a corporation deals honestly and fairly with its patrons and the public in general, and keeps "true and correct books of its proceedings and business," as required by statute, and there is no unlawful attempt made by those in control of the majority of the stock to combine their interests and by unfair means to so manipulate the affairs of the company as to "freeze out" or to otherwise sacrifice the interests of the minority stockholders, no serious harm can ordinarily result to the corporation from an inspection of its books by its

stockholders. While we think this liberal rule of inspection is a wholesome one, yet, as a legal proposition, we are not concerned as to whether the statute under consideration is a wise or an unwise measure. The statute gives the stockholder the absolute and unconditional right to inspect the books of the corporation, and it is the duty of this court to give it such effect.

The judgment is affirmed. Costs to respondent.

STRAUP, J. I concur.

LEWIS, District Judge. (Concurring).

I concur in the judgment affirming the judgment of the district court, but not upon the ground stated in the opinion of the court. Construing sections 328 and 329 of the Compiled Laws of Utah, 1907, merely as declaratory of the common law, I am of the opinion that the answer filed herein does not state facts sufficient to constitute a defense to the complaint as modified in plaintiff's motion for judgment, and am of the opinion that the judgment of the court should be based on that theory, and reserving for future determination the question as to whether the right under the statute is an absolute right or whether the court has power to deny inspection in cases where the courts heretofore under the common law have denied the right. That question was not fully presented in argument, and in my judgment its determination is not necessary in this case. Whether the remedy of the plaintiff was by judgment upon the pleadings or by demurrer to the answer was not raised either in the court below or in this court, and, as I understand it, this court expresses no opinion upon that question.