## HOLMES v. BISHOP et al.

No. 4881.   Decided February 18, 1930.   (285 P. 1011)

*A. A. Duncan,* of Salt Lake City, for appellants.

*B. C. Call,* of Brigham City, for respondent.

STRAUP, J.

Holmes, the plaintiff, a resident of the state, by his verified petition or complaint applied to and was granted by the district court a writ of mandate. Defendants appeal.

In the petition it was alleged that the plaintiff was a bona fide stockholder of record of the Intermountain Mortuary Company, a corporation organized under the laws of and doing business in Utah with its principal place of business at Salt Lake City; that the defendant Bishop was a director and the secretary, treasurer, and acting manager of the corporation, and, as such, had charge, custody, and control

of all of the books, records, accounts, minute books, and other records of the corporation; and that the defendant Christensen was the president of the company; that on or about February 11, February 14, and especially on February 19, 1929, the plaintiff, during business hours and between 1 and 5 p. m., applied to the defendant Bishop for permission to inspect the books and records of the company; and that the defendants refused to permit the inspection and still refuse to do so. An alternative writ was issued directing the secretary, treasurer, and acting manager of the company and the custodian of its records to permit the inspection and examination, or show cause.

The defendants answered admitting the allegations of the petition that the company was a corporation and did business and kept books and records as in the petition alleged; that the plaintiff was a stockholder of the company; that the defendants were officers of the corporation as in the petition alleged; and that the defendant Bishop as secretary and treasurer of the corporation had charge, custody, and control of the books and records of the company. The defendants then further alleged that on December 13, 1928, the plaintiff, on his request, was permitted to examine the books and records of the company and was given all the information desired by him regarding the affairs of the company, and that "on several occasions thereafter" the plaintiff came to the office of the company and asked for further information concerning the affairs of the company and on such occasions was given the information desired by him; and that "on or about February 19, 1929, the plaintiff again called at the office of the said company and demanded another inspection and examination of the books," and that the defendant Bishop "told him he would let him see any of the books of the company that he desired if he would tell him what he desired to see or what information he wished, but the plaintiff would not tell said defendant what information he wanted, nor would he designate any book or books that he wished to see or examine," and demanded that all

the books and records be turned over to him "without regard for the information desired or the purpose for which he wished to examine the same."

It is further alleged by the defendants that the plaintiff's demand for an inspection of the books "was not made in good faith or for any legitimate purpose, but was made for the purpose of harassing and annoying the defendants as officers of the said Intermountain Mortuary Company and to hinder them in the performance of their duties as such, and to bring them and the said company into disrepute with the stockholders of said company and with the public, and not otherwise." They further alleged that the plaintiff at all times stated in his petition, was a salesman of stock certificates of the Deseret Mortuary Company, a corporation, which was engaged in the same business as the Intermountain Mortuary Company and to a large extent operated on the same plan, and that the defendants "are informed and believe that another and further purpose of the plaintiff in making the demand for an inspection of the books was not to further or protect his own interest as a stockholder or the interest of other stockholders, but to use any information he may obtain for the purpose of bringing the said Intermountain Mortuary Company into disrepute with its stockholders and with the public and to injure said company and the business in the interest of the Deseret Mortuary Company."

On motion of the plaintiff the court granted judgment on the pleadings, in effect holding that there were not sufficient denials of the essential averments of the petition or complaint, and not sufficient facts alleged in the answer to constitute a defense, and thus made the writ permanent.

Under our statute, Comp. Laws Utah 1917, § 875, the corporation was required to keep true and correct books of its proceedings and business. By section 876, as amended by Laws Utah 1921, p. 74, it is provided that "all books of any corporation shall, at all reasonable hours, be subjected

to the inspection of any bona fide stockholder of record." By Comp. Laws Utah 1917, § 8372, it is further provided that every officer or agent of any corporation having or keeping an office in this state, who has in his custody or control any book, paper, or document of such corporation, and who refuses to give to a stockholder or member of such corporation lawfully demanding during business hours to inspect or take a copy of the same, or any part thereof, a reasonable opportunity to do so, is guilty of a misdemeanor.

It is not contended that the petition is wanting in facts to entitle the plaintiff to the demanded relief. It is partly contended, but not argued, that some of the essential allegations of the petition were put in issue. The chief contention, as argued, is that the affirmative and defensive matters alleged in the answer constituted a defense to the petition and hence the defendants were entitled to give evidence with respect thereto. The defendants, by their answer, as is seen, admitted that the plaintiff was a stockholder of record. One who regularly is a stockholder of record is presumed to be a bona fide stockholder. Not anything is alleged to overcome the presumption. What in such respect is alleged in the answer is, not that the plaintiff was not a bona fide stockholder, but that "the demand of the plaintiff for an inspection of the books of such company was not made in good faith." The petition alleged that the defendants, on February 11, 14, and 19, 1929, refused the plaintiff's request for an inspection. The alternative writ went out to the defendants reciting that it was made to appear that they, "on February 19, 1929," had refused the plaintiff an inspection and directed them to permit him to make an inspection, or show cause. In such respect the defendants answered that the plaintiff was given permission to make an inspection December 13, 1928, and "on several occasions thereafter" when the plaintiff came to the office and asked for further information or examination. But the defendants did not deny that in February, 1929, or especially that they on February 19, 1929, had refused

an inspection. To the contrary, they averred that the plaintiff at that time demanded an inspection and was told that he would be permitted to do so if he informed the defendants what information he desired and what books or records he desired to inspect, and that the plaintiff declined to give such information, and for such reason and for other affirmative matters alleged in the answer he in effect was refused an inspection. Had the defendants not refused an inspection as alleged in the petition and had they been willing to permit it as directed by the alternative writ, all they had to do was to comply with the writ and so report and answer to the court. Instead of that, the defendants appeared and contested plaintiff's right to an inspection as prayed by his petition, and sought to justify a refusal of it on the ground of the affirmative matters and defenses alleged in the answer. We thus think no issue was tendered that the plaintiff was denied permission to inspect as alleged by him.

Now, as to the matters pleaded in justification of the refusal: The statute in question has been before this court in a number of cases, especially in the cases of *Clawson* v. *Clayton,* 33 Utah 266, 93 P. 729; *Kimball* v. *Dern,* 39 Utah 181, 116 P. 28, 35 L. R. A. (N. S.) 134, Ann. Cas. 1913E, 166; *Goddard* v. *General Reduction & Chem. Co.,* 57 Utah 180, 193 P. 1103. In the first two cited cases it was held that the common-law right of a stockholder to inspect books of a corporation was modified and enlarged by the statute, and that under the statute the right of a stockholder of record to inspect books and records was absolute and unqualified except as to time—at reasonable hours —and that his motive seeking to exercise his statutory right is immaterial and may not be inquired into. Many cases are cited in *Kimball* v. *Dern,* supra, in support of such views. Such, too, is the view generally of judicial holdings under statutes similar to ours. In 7 R. C. L. 322, it is said that: "It is sometimes said" of statutes "that they are merely declaratory of the common law. It is generally conceded,

however, that they materially enlarge and extend the common-law rule and do not simply affirm it." On page 326 the author further says: "Where the right of a stockholder to inspect the books and records of his company has not been enlarged by statute, it can be exercised only in good faith and for some just, useful and reasonable purpose." In further considering "the motive or purpose of a shareholder to make an inspection," the author observed that: "Where the right of a stockholder to inspect the books of a corporation is declared by statute, his motive in exercising the right is generally not a subject for judicial inquiry. He may demand an examination without disclosing his reasons or purposes." The author further, however, states that in some jurisdictions it is held that courts have power to prevent a stockholder from abusing his privilege and to not direct an inspection for mere idle curiosity or for improper or unlawful purposes. But he further states that, "The modern view, where the right of inspection is conferred by statute absolute in terms, is that the application cannot be denied on the ground of improper motive, because a clear legal right created by statute cannot be defeated by showing an improper motive." Substantially the same rule is stated in 14 C. J. 854-857.

It is urged upon us that the rule stated in *Kimball* v. *Dern,* supra, was to some extent modified in *Goddard* v. *General Red. & Chem. Co.,* supra. We think not. To the contrary, the essentials of the rule stated in *Kimball* v. *Dern* were followed and applied in the Goddard Case. Much more affirmative and defensive matter was alleged in the Goddard Case than was present in the Kimball Case. In the Goddard Case it was specifically denied that the stockholder seeking the inspection was a stockholder of record. In addition, it was also affirmatively alleged that the stockholder there presented a certificate of stock which he asked to have transferred and upon which he based his right for an inspection and which was so mutilated by acid erasures as to justify, under advice of counsel, a refusal to make the trans-

fer; that the corporation was carrying on its business from moneys derived from sales of its capital stock on installment payments; that the alleged stockholder seeking the inspection was in the employ of another corporation selling its capital stock, and theretofore by an inspection of the records of the defendant corporation had obtained a list of its stockholders and sent circulars and other writings to them urging them to breach their contracts with the defendant corporation and to purchase stock of such other company; and that the further inspection demanded was to obtain additional names of stockholders of the defendant corporation for the same and for no other purpose which was alleged to be in violation of Comp. Laws Utah 1917, §§ 8351 and 8352, fraudulent and unlawful, "actuated with malice," and in furtherance "of a blackmail scheme and device" for the benefit of the plaintiff and to the injury of the defendant corporation.

In the Goddard Case, the court below struck a part of the alleged affirmative and defensive matter and retained a part, but nevertheless rendered judgment on the pleadings. This court, on appeal, held that the whole of such pleaded affirmative and defensive matter should have been stricken, but reversed the judgment and remanded the case on the sole ground that by the answer it was specifically denied that the stockholder seeking the inspection was a bona fide stockholder of record, and that it was further specifically denied that he was refused an inspection at the time claimed or at any other time. In the Goddard Case it is stated that there may be "conditions or circumstances" which would justify a corporation in refusing an inspection, and in *Clawson* v. *Clayton* that matters in defense might be alleged which, if true, might justify a refusal of the writ. Whatever such "conditions or circumstances" may be, can be determined when they arise and are presented. If the affirmative and defensive matters and things, whether of substance or because of defective allegations, in the Goddard Case ought to have been stricken,

as held by this court, it of necessity follows that the affirmative and defense matters here alleged were properly stricken or disregraded by the court below. Here it is not denied that the demanded inspection at the time in question, in February, 1929, was refused. To the contrary, the defendants by their answer, in effect, admitted that the inspection at the time in question was refused because the plaintiff declined to state the purpose for which he desired the inspection. The plaintiff was not required to state his purpose and had the right to demand an inspection without stating his purpose or motive therefor. That the plaintiff had been given the privilege of an inspection in December, 1928, and on several occasions thereafter, did not justify the defendants in refusing a further inspection in February, 1929. *Cincinnati Volksblatt Co.* v. *Hoffmeister,* 62 Ohio St. 189, 56 N. E. 1033, 48 L. R. A. 732, 78 Am. St. Rep. 707, cited and approved in *Kimball* v. *Dern,* supra, and as a correct statement of the law as to the right of a stockholder to inspect and examine books and records of a corporation. This court, in *Kimball* v. *Dern,* in a rather exhaustive consideration of the question, held that the motive or purpose of a stockholder demanding or requesting an inspection or examination was not, under the statute, a matter of judicial inquiry. Many cases are there cited in support of the holding. Such, too, and as stated in 7 R. C. L. supra, is the trend of modern authority under similar statutes. Decisions of most of the cases to the contrary are based either on the common law or on statutes different from ours.

The allegations in the answer that the plaintiff was an employee of a competitive corporation and intended to use whatever information was acquired by him by an inspection for the benefit of himself and for such competitive company, and to the injury of the corporation whose books and records the plaintiff desired to inspect, were made on mere information and belief which alone was sufficient to authorize the court to disregard such allegations. However, had such allegations been made as facts,

still such would not have constituted a defense. *Weihenmayer* v. *Bitner*, 88 Md. 325, 42 A. 245, 45 L. R. A. 446, also cited and approved in *Kimball* v. *Dern.*

In the answer it also was alleged that the plaintiff sought the inspection "for the purpose of harassing and annoying the defendants as officers of the said Intermountain Mortuary Company and to hinder them in the performance of their duties as such and to bring them and the said company into disrepute with the stockholders of said company and with the public." All that is a mere conclusion without any alleged facts to support it. It is not alleged that the plaintiff made his request at an unreasonable hour or hours, or that it was inconvenient to the defendants or to the company to permit the inspection at the time requested, or that the defendants at the time were themselves using the books or performing any duties with respect to them, or that to permit the inspection at the time requested would hinder or delay or interfere with other duties being performed by the defendants.

We thus are of the opinion that no meritorious defense was pleaded to the petition and that the court therefore did not err in rendering judgment on the pleadings.

Let the judgment of the court below be affirmed, with costs to respondent. Such is the order.

CHERRY, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.